## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

_____

**CHRISTOPHER FRANKLIN**                                           **PLAINTIFF**

        **vs**                    **Case No. <u>2:25-cv-00133-KGB</u>**

**CHRISTOPHER MORLEDGE, in his
individual capacity and as Circuit Judge,
First Judicial Circuit of Arkansas, and,
TODD MURRAY, in his individual capacity
and as Prosecuting Attorney, First Judicial
Circuit of Arkansas,**                                           **DEFENDANTS**

_____

## <u>AMENDED COMPLAINT</u>

Plaintiff Christopher FRANKLIN, by and through his attorney Rickey L.

Hicks, for his cause of action against the Defendants Christopher MORLEDGE and

Todd MURRAY and each of them, brings this amended civil rights complaint

pursuant to 42 USC §§1983, 1985, 1988 and the 1st, 4th, 5th, 8th and 14th

Amendments to the Constitution of the United States and the Constitution of the

State of Arkansas, and, the tort of outrage.

The Defendants are each elected public officers. Plaintiff is an elected public

officer. Special factual circumstances exist in this lawsuit sufficient to overcome any

immunity claims either defendant might otherwise attempt to plead. With the

1

exception of Count Six, this civil suit seeks only injunctive and declaratory relief, and attorney fees. Accordingly, Plaintiff alleges these Defendants may be held to answer, and, may be restrained from furthering and prospering their past civil rights violations and enjoined from future such violations under the provisions of Sections 1983, 1985 and 1988.

## I. PRELIMINARY STATEMENT

## A. NATURE OF THE AMENDMENTS

i.      Subsequent to the filing of the original Complaint, Defendant MORLEDGE undertook to enter an unlawful "Order[1]" [EXHIBIT A] in case 54CV-23-7, filed in the Circuit Court of Phillips County, Arkansas, styled "Williams v. City of Helena-West Helena."

ii.     At the time of the issuance of his Order in that case, Defendant MORLEDGE well knew that the Arkansas Supreme Court, in appellate case CV-25 267, had stayed his state Circuit Court on May 13, 2025, from taking any further action, _whatever_, pending appellate resolution of the matter which was then on appeal to the Arkansas Supreme Court. This Order was issued by him in the absence of any and all judicial authority.

---

[1] Although Defendant styled his document as an "Order," it cannot possibly be an authorized. legitimate or correct court order. Prior to his authoring and signing this faux document, Defendant MORLEDGE was well aware that his Court was under a full stay of proceedings issued by the Arkansas State Supreme Court. Nevertheless, Defendant MORLEDGE used the Court Clerk's office in Phillips County, Arkansas as a vehicle whereby he created, signed and spread this "Order." Thereafter he took other actions calculated and intended to deny and deprive Plaintiff and another of their freedom, liberty and property, all without a scintilla of judicial authority to do so despite Defendant's holding of a judicial office. This conduct self-deprives the Defendant of any justiciable claim to immunity from suit.

iii.    Following his unlawful attempts to incarcerate Plaintiff FRANKLIN in the Woodruff County jail for an indeterminate period, the Arkansas Supreme Court entered yet *another* emergency stay of Defendant MORLDEGE's ability to take *any* action in the *Williams* Circuit Court case.

iv.    The Amendments to the original Complaint are thus:

a.) addition of a two new Counts (five and six) alleging ongoing civil rights violations including a scheme to obtain the false arrest and imprisonment of Plaintiff[2] and,

b.) addition of a new Count (seven) alleging active, unlawful deprivation and willful interference with the rights of Plaintiff FRANKLIN to pursue his civil appeal of the CV54-15-208 "removal from office" case.

v.    These new allegations can be distinguished from the original allegations in that they are alleged to be actions which were taken in the complete absence of any lawful judicial authority whatsoever to take such actions, thereby eliminating all claims of Defendant MORLEDGE to any immunity.

vi.    Other changes include more specific allegations regarding Defendant MURRAY's lack of immunity in that he voluntarily but falsely subscribed a verification of pleadings in a related state case thereby stepping outside his duties and role of prosecutor and assuming the role of a witness or complaining witness. In

---

[2] Plaintiff believes that the events leading up to MORLEDGE's attempt to imprison Plaintiff were either in retaliation for having filed this lawsuit, or, were done in order to impede and interfere with Plaintiff's ability to prosecute this action.

so doing, he has voluntarily waived his absolute and/or qualified civil immunity. *Kalina v. Fletcher,* 522 U.S. 118 (1997). Plaintiff further alleges Defendant MURRAY has no qualified immunity. He well-knew at the time of his misdeeds, the full extent of the well-established civil rights of Plaintiff, and violated those rights purposefully and with willful intent to abridge such rights.

vii.    Finally, we remove areas of surplusage thus enabling the parties to better focus on dispositive issues.

## B. RELEVANT HISTORY

### Helena-West Helena Civil Government/Services in Early 2023

1.    Plaintiff is the elected city Mayor of Helena-West Helena, Arkansas. Mayor FRANKLIN assumed office on January 1, 2023 for a four (4) year term. Upon assuming the Mayor's office, Plaintiff quickly learned that the fiscal condition of the city was far worse than he initially thought. The municipal infrastructure was hovering at the brink of collapse. The city's potable water supply was inadequate and the delivery system was in peril of catastrophic failure. The water department lacked an adequate number of trained, licensed operators. The city was inadequately funded and the prior city administration had allowed numerous fiscal accounts to run to collection or suit. The municipal landfill did not meet state or federal operating specifications. The heavy equipment in service was, for the most part, in failed condition and inadequate to meet the day-to-day operating requirements of the facility. Garbage collection in the city was fraught with delays, missed pickups, equipment failures and an inadequate number of collection vehicles

sufficient to serve the city's residents. A large number of abandoned structures ranging from single family dwellings to a multi-building, multi-family public housing project peppered the city. This created arson hazards and a significant public health risk since the structures attracted vermin, trash dumpers, squatters and vandals. Many of these structures had been burned by arsonists and nearly all were overcome with weeds, tall grass, trash, abandoned vehicles and other rubbish.

2.      Plaintiff and the city council thereafter devised and began to implement a municipal infrastructure stabilization and recovery plan. With the energetic assistance of the Helena-West Helena City Council, the infrastructure was slowly stabilized. On January 18th, 2024, one of the city's critical water wells failed, thereby occasioning one of the most dangerous and widespread public safety emergencies in the city's recent history. This setback required adaptive, expedient and extraordinary efforts by the city to overcome the effects of several large areas of the city being totally without any water; other areas of the city with extremely low water pressure and the requirement of a long-term boil order for municipal water customers.

3.      Eventually, funding for a new well was secured; a site was selected, and several months later the new well came online thereby restoring to some extent the status quo. Through the process of leasing/renting heavy equipment, the landfill was able to slowly regain a lawful operating status. The city street department, occasionally assisted by outside contractors, began to overcome significant deficits in roadway, drainage and related infrastructure repairs.

### Fiscal Shortfalls & Economic Recovery Efforts

4.    The city thereafter began to battle the effects of fiscal limitations and slowly began paying down some, but clearly not all municipal debt. These struggles continue to the present day. Slowly, but with a newfound sense of sureness, the city has begun an era of recovery. This recovery is fragile and relies on the enthusiasm and goodwill of the citizenry in order to grow[3] and strengthen.

5.    Not every sector of the community at the periphery of city government has been happy with these changes. Some decry the slow pace of recovery, others complain that not enough is being spent on social programs. Still others perennially complain at city council meetings about how city hall is being run. In other words, Helena-West Helena is pretty much like many other small-towns in Arkansas:  a little beat up in places, beautiful in others, and always looking for the means whereby to prosper its families and communities which make up the city.

### Open Racial Animus by Defendant Morledge

6.    The vast majority of Helena-West Helena's citizens are of African-American descent. Caucasian citizens are in the minority in Helena-West Helena. Defendant MORLEDGE and his husband reside over 50-miles from Helena and have virtually no ties to the community. This has, however, not affected

---

[3] Helena-West Helena, like many small communities in the Delta continues to lose population. Adverse factors such as lower birthrates, young adults moving out of the community, and a struggling commercial base results in scarcity of good paying jobs. The declining adult population in the Delta is resulting in a number of small cities and towns losing population and a decline in tax and other revenue thereby exacerbating their solvency problems.

MORLEDGE's willingness to make disparaging remarks about the African-American Circuit Court Clerk of Phillips County, Arkansas and her staff.[4] Defendant MORLEDGE and Defendant MURRAY hold thinly concealed contempt and hatred for the African-American people of Phillips County, Arkansas.

7.      Mayor Christopher FRANKLIN, Plaintiff herein, is of African-American descent and he is proud of his city; proud of Phillips County, Arkansas and proud of the history of hard work, sacrifice and endurance of spirit of its people, regardless of their racial origin. This appears to have deeply offended both Defendants, and they have acted on their deep-seated senses of racial entitlement; their racial bias and animus toward African-Americans in general and their patronizing sense that at the end of the day, only Caucasians are competent to run governmental offices in Helena. Within the preceding few years these same two Defendants have operated a common scheme to violate civil rights by utilizing their public offices as cover for their racist bearings. In this period they have improperly removed two other African-American public officials from public offices in Phillips County government. Plaintiff respectfully argues that this ongoing, organized and well-oiled misuse of their government offices to serve as a vehicle of gross

---

[4] These instances are cited in Plaintiff's Brief in CV-25-343, before the Supreme Court of Arkansas. On pg. 15, fn 6., "*The first statement was …I don't think you understand how Phillips County works. I'll just say that. Finding the clerk would be like finding a needle in a haystack there. (RP 65, 70).* The second statement we cite is from the same brief, [a continuation of fn 6 on pg. 16] "*The second statement was …I'm going to be very careful in what I say because I don't want it to be misinterpreted. But there is a long well-known history of dubious activity that occurs only in Phillips County, Arkansas. And that's all I'm going to say about that. (RP 66, 71)*." Discovery will better explain the tone, affect, mood, demeanor and attitude whereby these statements were publicly conveyed.

oppression of African Americans should be forthwith interdicted by this Court in the instant case.

## II. THE PARTIES

8.      Plaintiff Christopher FRANKLIN is a life-long resident of Phillips County, Arkansas and is the elected Mayor of Helena-West Helena, Arkansas.

9.      Defendant Christopher MORLEDGE is a resident of Forrest City, Arkansas and is an elected Circuit Judge for the 1st Judicial Circuit, State of Arkansas. In such counts as Defendant MORLEDGE is alleged to have wrongfully acted in, it is alleged that he acted in the clear absence of all jurisdiction.[5]

10.      Defendant Todd MURRAY is a resident of Helena-West Helena, Arkansas and is the elected Prosecuting Attorney for the 1st Judicial Circuit, State of Arkansas. Both defendants are licensed, practicing attorneys in the state of Arkansas. They each have been to accredited law schools, received periodic continuing legal education, are learned in the law and each has a number of years of experience in the profession. Each are familiar with the Constitutions of the United States of America and the State of Arkansas. At all times material, each Defendant was well aware of the well-established Constitutional rights of the Plaintiff.

---

[5] Initially, Defendants aided and abetted each other in "forum" or "judge shopping" as a means of placing MORLEDGE in a position to assume control of the initial civil case that became 54CV-25-208. Following the illegal conduct that led to the creation of that case, and despite their knowledge that the case was subsequently assigned to the Hon. Chalk Mitchell, Circuit Judge, Phillips County, Arkansas, the Defendants engaged in a bizarre series of actions that led to the nearly immediate non-jury trial of the case on the morning of the third (3rd) working day after it was filed with the Circuit Clerk. No legitimate personal nor subject matter jurisdiction was ever vested in Defendant MORLEDGE or his Court by way of these patently unlawful acts.

### III. VENUE

11.     Venue is proper in this Court under 18 USC § 1391(b) because the Plaintiff resides here. A substantial part of the events giving rise to this litigation occurred in the Eastern District of Arkansas. This Court has venue and subject matter jurisdiction by virtue of 21 USC § 1331 and 28 USC § 2201. An actual controversy of justiciable nature exists between Plaintiff and the Defendants, involving rights and obligations under the Constitution of the United States.

### IV. JURISDICTION

12.     This court has subject matter jurisdiction pursuant to 28 USC § 1331, 28 USC §§ 2201, 2202, the 1st, 4th, 5th and 14th Amendments to the United States Constitution. Additional jurisdiction is availed under 28 USC §1343 because Plaintiff claims damage and deprivation was inflicted under the color of law pursuant to 42 USC § 1983; a conspiracy to violate civil rights under 42 USC § 1985 and attorney fees are sought under 42 USC § 1988.

### V.  FACTS COMMON TO ALL COUNTS

13.     Plaintiff incorporates prior paragraphs 1-12 (inclusive) as is set out here and repeated in their entirety. All of the *Facts Common to All Counts* are incorporated into each Count as if repeated in full within the body of each separate Count. From at least June 1, 2020 and continuing through the present, in the Eastern District of Arkansas and elsewhere, the Defendants MORLEDGE and MURRAY devised and intended to devise a common scheme, plans and courses of action designed and intended to deprive and deny Plaintiff and various unrelated

African-American citizens of Phillips County, Arkansas of their Constitutional rights secured them under the United States Constitution, including rights secured under the first (1st), fourth (4th), fifth (5th) and fourteenth (14th) amendments thereto, all in violation of 42 USC §1983[6] et seq.

14.    It was part of their common plan and scheme that the defendants would and did, from time to time, create and file in the Circuit Court of Phillips County, Arkansas, various artifices and documents which facilitated their civil rights violation schemes. These artifices simulated what otherwise appeared to be legitimate legal processes and included both civil-style pleadings and criminal-style pleadings.

15.    It was part of their common scheme and plan that MORLEDGE and MURRAY would and did, from time to time, file such spurious documents into the 1st Judicial Circuit Court records system in Phillips County, Arkansas. In creating and filing such documents, the Defendants did these acts knowingly, willfully, wrongfully and with intent to deny and deprive Plaintiff of his well-established civil rights, all as set out above. MORLEDGE and MURRAY well knew of the falsity and wrongfulness of their actions at the time such acts were performed. They well knew that their actions were taken in the absence of any lawful authority to occasion such acts.

---

[6] Although not actionable in a civil case, these same Defendants likely violated the criminal provisions prohibiting willful deprivation of civil rights under the color of law, and conspiracy to do so, codified under 18 USC §§241, 242, 1 and 2.

16.     It was part of the scheme that the defendants, absent any legitimate lawful authority to so act, would prepare these documents together, each knowing the other was using their respective political office as the means of concealing their true intent of inflicting deprivation of civil rights under the color of law. It was part of their scheme that MURRAY would and did, on June 24, 2025 at or about 1:00 p.m., tendered to MORLEDGE, for filing in open Court[7], a bundle of such spurious documents marked up as:

       a.) Verified Complaint

       b.) Motion for Temporary Restraining Order

       c.) Temporary Restraining Order

MURRAY made intentional false statements; made incomplete and misleading statements; failed to make other statements required to be made in order to make other statements "not misleading." He personally signed the "Verified Complaint" as a complaining witness.

17.     Both MORLEDGE and MURRAY well-knew that their scheme to introduce their spurious documents, in this instance filed under Phillips County Arkansas Circuit Court case number 54CV-2025-208 (State v. Franklin), was in direct, willful violation of the Arkansas State Supreme Court's *Administrative Order No. 14* and 1st Judicial Circuit Court *Administrative Rule 1*, which two rules

---

[7] It was part of the scheme that each Defendant acted with the other to avoid the established and mandated system of judicial assignment of cases by random drawing. Instead, each assisted the other in "forum/judge shopping" with the goal as assuring that MORLEDGE would control the resulting "cases" they fabricated.

require the random selection of judges within the Judicial Circuit[8]. In previous unrelated cases of "removal from office" filed by these Defendants against two separate public office holders in Phillips County, they employed the same scheme whereby MURRAY would funnel the spurious documents to MORLEDGE who would then "file" them in his Court, and later obtain a case number from the Circuit Clerk. By using this scheme, they were able to conceal their activities from other Judges in the Circuit and assure that they could evade detection of their unlawful schemes and actions, and thereby completely control the outcome of the spurious lawsuits[9].

18.    By employing these artifices and devices of fraud, MORLEDGE and MURRAY were able to subvert justice and operate their fraud to the detriment of their particular target victim. In this instance, MURRAY prepared a fraudulent collection of documents and used them, with MORLEDGE's signature on a simulated "temporary restraining order[10]" and immediately thereafter instantly

---

[8] Although Defendants MORLEDGE and MURRAY entered into an unreported, concealed and illicit agreement whereby MURRAY would and did "forum shop" the case, when the same paperwork was delivered to the Circuit Court Clerk of Phillips County, Arkansas, the case was then immediately randomly assigned to Judge Chalk Mitchell. At no time did Defendant MORLEDGE ever seek to have the case transferred to him nor was the case ever transferred to him. In fact, every action taken in the 54CV-25-208 case was done wholly without judicial authority since Judge Mitchell was assigned the case; was not in any way unable to proceed nor was he disqualified. In fact, as the record of that case reflects, *Judge Mitchell recused from the case the day <u>after</u> Defendant MORLEDGE entered his decision* and judgment in the case—a case he was not even assigned to. In paragraph 2 of his recusal, Judge Mitchell directed the Clerk of the Court to redraw the case. For reasons not yet known, <u>this reassignment has still not occurred on the record.</u>

[9] These "cases" were never legitimate civil or criminal actions, rather, they were "simulated legal proceedings with a predetermined outcome;" an outcome engineered by the two Defendants acting in concert with each other.

[10] In Plaintiff's "208" case, Defendant MORLEDGE was handed a "Summons" by Defendant MURRAY, made out to Plaintiff, and hand notated on it, "Filed in open court 25 June 2025 at 1:00 p.m." This violated the Arkansas Rules of Civil Procedure which holds that legitimate civil actions must be filed with the Clerk of the Court, not with a judge in open court.

removed Plaintiff FRANKLIN from public office, in complete and open violation of notice and hearing requirements of Arkansas Rules of Civil Procedure, Rule 65. Plaintiff was never afforded any meaningful opportunity to be heard; to effectively employ counsel or have the benefit of a legitimate adversarial proceeding prior to being removed from office by Defendants.

## VI. COUNTS

### COUNT ONE

19.     Plaintiff adopts and incorporates each previous paragraph herein, as if set out in full here, and further says:

20.     On June 25, 2025, In the Eastern District of Arkansas at Forrest City, and elsewhere, Defendants MORLEDGE and MURRAY conspired to use simulated legal processes resembling legitimate civil action pleadings, naming the State of Arkansas as Plaintiff and Christopher Franklin as Defendant, marked up as case number 54CV-2025-208, Phillips County Circuit Court, said pleading styled as a "SUMMONS." All in furtherance of a common scheme, plan and conspiracy in violation of 42 USC § 1983, 1985. Plaintiff has actually been deprived thereby of his civil rights to the due process of law; assistance of counsel and his state rights to hold and exercise his elected public office.

### COUNT TWO

21.     On June 25, 2025, In the Eastern District of Arkansas at Forrest City, Defendants MORLEDGE and MURRAY conspired to use simulated legal processes and other artifices resembling legitimate civil action pleadings, naming the State of

Arkansas as Plaintiff and Christopher Franklin as Defendant marked up as case number 54CV-25-208, Phillips County Circuit Court, said pleading styled as a fraudulent "VERIFIED COMPLAINT." All in violation of 42 USC § 1983, 1985. Plaintiff has actually been deprived thereby of his civil rights to the due process of law; assistance of counsel and his state rights to hold and exercise his elected public office.

### **COUNT THREE**

22.     On June 25, 2025, In the Eastern District of Arkansas at Forrest City, Defendants MORLEDGE and MURRAY conspired to use simulated legal processes resembling legitimate civil action pleadings, naming the State of Arkansas as Plaintiff and Christopher Franklin as Defendant, marked up as case number 54CV-25-208, Phillips County Circuit Court, said pleading styled as a "MOTION FOR TEMPORARY RESTRAINING ORDER." All in violation of 42 USC § 1983, 1985. Plaintiff has actually been deprived thereby of his civil rights to the due process of law; assistance of counsel and his state rights to hold and exercise his elected public office.

### **COUNT FOUR**

23.     On June 25, 2025, in the Eastern District of Arkansas at Forrest City, Defendants MORLEDGE and MURRAY conspired to use simulated legal processes resembling legitimate civil action pleadings, naming the State of Arkansas as Plaintiff and Christopher Franklin as Defendant marked up as case number 54CV-25-208, Phillips County Circuit Court, said pleading styled as a "TEMPORARY

RESTRAINING ORDER." All in violation of 42 USC § 1983, 1985. Plaintiff has actually been deprived thereby of his civil rights to the due process of law; the effective assistance of counsel and his state rights to hold and exercise his elected public office, and his state rights to hold and exercise his elected public office. From the time that the spurious "temporary order" was issued until an unnoticed bench trial was had two (2) working days later, Plaintiff was deprived of his lawfully elected public office.

## COUNT FIVE

24.    On June 25, 2025, in the Eastern District of Arkansas at Forrest City, Defendants MORLEDGE and MURRAY conspired with each other to use, and to make false, untrue and misleading statements under oath; created and filed civil action pleadings, naming the State of Arkansas as Plaintiff and Christopher Franklin as Defendant marked up as case number 54CV-25-208, Phillips County Circuit Court, said pleading styled as a "*Verified Complaint for Declaratory Judgment . . . .*" On page 7, at paragraph 11 (e), [EXHIBIT B] MURRAY falsely swore and subscribed as a complainant or as a witness (or both), under oath, and recited that one of the grounds in said action was: "Failing to abide by a mandate of the Arkansas Supreme Court. *City of Helena-West Helena and Christopher Frankin, as Mayor of the City of Helena-West Helena v. Greg Williams*, 2024 Ark. 102, Appeal from the Phillips County Circuit Court, 54CV-25-07-3." As both MORLEDGE and MURRAY well knew at the time of this false swearing, the only "mandate" affecting civil case 54CV-25-07 was the *Formal Order* of the Arkansas Supreme Court in case

CV-25-267 wherein the Circuit Court of Phillips County, Arkansas was *forbidden by way of an emergency stay* of 54CV-25-07, [EXHIBIT C] to assert any jurisdiction over, or take any action in the subject matter, or any action against the parties in the case, and which stay removed all authority of MORLEDGE or MURRAY to take any other actions, regardless of their nature, under or within that proceeding. Plaintiff has therefore actually been deprived thereby of his civil rights to the due process of law; the effective assistance of counsel; his elected office salary and expense reimbursements, and his rights to hold and exercise his elected public office. Plaintiff has actually been deprived thereby of his federal civil rights to the due process of law; his Arkansas state rights of, and protection under due process; of the effective assistance of counsel, and, his state right to hold and exercise his elected public office. Plaintiff is likewise entitled to declaratory judgment, stating the illegality of this civil rights deprivation, and for temporary, preliminary and permanent injunctive relief against future such conduct.

## COUNT SIX

25.    On July 29, 2025, in the Eastern District of Arkansas at Forrest City, Arkansas, Defendants MORLEDGE, although being licensed attorney in the State of Arkansas; being taught and learned in the law; and while holding the public judicial office set out above, undertook to expand and further the common scheme to violate the civil rights of Plaintiff. At 12:22 p.m., MORLEDGE filed or caused to be filed, a fraudulent document with the Clerk of the Phillips County, Arkansas Circuit Court entitled, "ORDER." (See, EXHIBIT A). Prior to its filing, Defendant

MORLEDGE personally signed this paper. The purported "Order" directed Plaintiff (and his Chief of Staff, James F. Valley) to surrender to the Woodruff County Arkansas Jail, there to serve out lengthy jail sentences for putative "contempt" of Defendant MORLEDGE's Court. The Defendant MORLEDGE well knew at the time this action was taken that he was deliberately and wrongfully acting under the color of law. Likewise, the Defendant well knew or should have known by way of his experience and training as a licensed attorney that the case in which he caused this "Order" to be filed was under Formal Order [See. EXHIBIT C] of stay by the Arkansas State Supreme Court. The Defendant well knew the actions he was taking under the color of law was utterly void and bereft of any possible claim to lawful authority for their actions, given the Supreme Court stay. Defendant was well aware that the civil rights he sought to deprive Plaintiff of were clearly established at the time he undertook to abrogate and violate them.

26.    When the Arkansas Supreme Court was subsequently informed of, and, later considered the scheme of the Defendant, they immediately issued yet *another* temporary Emergency Stay in case 54CV-25-7; set the matter for further proceedings and on August 1, 2025, then issued another emergency Order [EXHIBIT D] enforcing its earlier [EXHIBIT C] stay in the case. Defendant has incurred thousands of dollars in legal fees protecting his freedom. Plaintiff has suffered significant, compensable injury as a result of the intentional infliction of emotional distress and direct financial harm by way of this outrageous, unlawful series of events. Plaintiff demands a money judgment against the Defendant in an

17

amount to be determined at trial; for punitive damages to deter him from future such conduct and permanent injunctive relief prohibiting further practice of the proscribed conduct on the part of Defendant as set out in this Complaint. The actions complained of were undertaken in the complete and utter absence of any conceivable lawful judicial authority of Defendant Morledge to take such actions. Plaintiff has actually been deprived thereby of his civil rights to the due process of law; his Arkansas state rights of civil appeal; of the effective assistance of counsel and his state rights to hold and exercise his elected public office. Plaintiff is likewise entitled to declaratory judgment, stating the illegality of this civil rights deprivation, and for temporary, preliminary and permanent injunctive relief against future such conduct.

## COUNT SEVEN

27.     On July 31, 2025, in the Eastern District of Arkansas at Forrest City, Defendant MORLEDGE, while being served with summons and complaint in this case, intercepted an invoice from and payment to a Court Reporter, Olivia Thomas, who had reported the removal proceedings in case 54CV-25-208, Phillips County, Arkansas. This payment had been tendered to Mrs. Thomas in the St. Francis County, Arkansas, courtroom used by Defendant MORLEDGE while Mrs. Thomas (and others) waited for Defendant MORLEDGE to enter the courtroom and begin the daily session. Shortly after being handed the payment, Mrs. Thomas got up, returned to chambers and after a brief period returned to the courtroom. Shortly thereafter Defendant MORLEDGE entered the courtroom to convene "drug court."

At that time he asked that the persons there to serve him with the summons and complaint approach the bench. Immediately thereafter, Defendant MORLEDGE aggressively passed the envelope containing Mrs. Thomas' invoice and check paying said invoice (for preparing the trial transcript for appellate purposes) back to the service agent. Defendant MORLEDGE instructed that counsel for Plaintiff well knew that it was a violation of civil or appellate rules to try to order or pay a reporter for a transcript prior to filing a notice of appeal. But Defendant MORLEDGE, as an attorney, educated, trained and learned in the law well knew at that time that Ark. Code. Ann. §16-13-5-510(c) requires that counsel make satisfactory arrangements with the court reporter for transcripts and fees for transcripts *before filing the notice of appeal.* Interfering with this transaction by and between Plaintiff and the Court Reporter denies and abridges Plaintiff's ability to timely file his appeal to the Arkansas Supreme Court in Phillips County Circuit Court case 54CV-25-208. Defendant MORLEDGE's actions were and are contrary to well-established judicial procedures, customs and processes. It effects a costly and time-consuming process whereby Defendant must now apparently resort to yet another Supreme Court intervention even to accomplish the mundane task of ordering a transcript. All of the foregoing conduct was done under the color of law, and done in violation of the well-established civil rights of the Plaintiff to perfect a timely appeal of Defendant MORLEDGE's decision in the above cited "removal from office" case. All of this misconduct is actionable under 42 USC §1983. The actions complained of were undertaken in the complete absence of any lawful judicial

authority of Defendant Morledge to take such actions. Plaintiff has actually been deprived thereby of his civil rights to the due process of law; assistance of counsel and his state rights to hold and exercise his elected public office. Further, since Plaintiff has actually been deprived thereby of his civil rights to the due process of law; assistance of counsel and his state rights to hold his elected public office; he is entitled to declaratory judgment stating this deprivation and for temporary, preliminary and permanent injunctive relief against future such conduct.

## VII. RELIEF SOUGHT

## DECLARATORY JUDGMENT

28.     Plaintiff prays for Declaratory Judgment that the scheme to violate Plaintiff's civil rights as set out in Counts one through Seven (inclusive) is an unconstitutional scheme; that any conspiracy to operate such scheme is illegal and both acts violate 42 USC §§1983, 1985. Plaintiff specifically prays for Declaratory Judgment that such actions were outrageous; were done under the color of law and done without any authority underlying such actions, and that as a result Plaintiff has actually been deprived thereby of his civil rights to the due process of law; the right of jury trial; to the effective assistance of counsel and his state rights to hold and exercise his elected public office.

## INJUNCTIVE RELIEF

29.     Plaintiff prays for Temporary, Preliminary and Permanent Injunction against the Defendants MORLEDGE and MURRAY, forbidding them from engaging in any further scheme(s) to violate Plaintiff's civil rights; a Permanent

Injunction prohibiting any conspiracy to operate such a scheme that violates 42 USC §§1983, 1985.

## MONETARY DAMAGES, COSTS OF THE ACTION & ATTORNEY FEES

30.    Plaintiff prays for monetary damages in Count Six to be determined at jury trial; for the full costs and fees associated with the action together with a reasonable attorney's fee be taxed to the Defendants, jointly and severally; said assessment to run with the maximum interest allowed under Arkansas or Federal law from date of judgment until paid.

## EQUITABLE RELIEF

27.    Plaintiff prays for all other equitable relief to which the Court may find him entitled.

## JURY TRIAL DEMAND

28.    As to all matters triable by a jury, Plaintiff demands trial by jury.


Respectfully submitted,
CHRISTOPHER FRANKLIN, PLAINTIFF, by:


*Rickey H. Hicks*  [ELECTRONICALLY SIGNED]
_____
Rickey H. Hicks, No. 89235
Attorney at Law
1323 Broadway
Little Rock, AR  72206
501-920-7298
Email: hickslawoffice@yahoo.com

ELECTRONICALLY FILED
Phillips County Circuit Court
Tamekia L. Franklin, Circuit Clerk
2025-Jul-29. 12:22:41
54CV-23-7
C01D03 : 2 Pages

IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKASAS

CIVIL DIVISION

GREG WILLIAMS                                              PLAINTIFF

NO. 54CV-23-7

CITY OF HELENA-WEST HELENA
AND CHRISTOPHER FRANKLIN, AS MAYOR OF
HELENA-WEST HELENA                                        DEFENDANTS

ORDER

BACKGROUND

This court reincorporates, in its entirety, its prior Order electronically filed on 2025-February-13 at 10:05 in this case. On January 10, 2023, the Plaintiff filed a Petition to issue a Temporary Restraining Order and Injunctive Relief against the actions of the City Council regarding Ordinances 39-22 and 40-22. On April 24, 2023, this court issued an Order declaring that the actions of the former mayor, Kevin Smith, regarding his veto of those actions were valid and that the two ordinances were null and void. The Arkansas Supreme Court affirmed the lower court's ruling. On July 25, 2024, the Plaintiff filed a Motion for Contempt against the Mayor and Chief of Staff. The court held a hearing on February 3, 2025, on this issue. This court entered an Order, filed February 13, 2025, holding both the Mayor and the Chief of Staff in contempt of court and ordered that Mr. Valley could purge himself of contempt by payment of $33,000.00 within 90 days and Mr. Franklin could purge himself of contempt by payment of $23,000.05 within 90 days (the amounts of overpayment of salary previously declared null and void by the court). In the event that either party failed to pay, he was ordered to report to the Woodruff County jail on day 91.

Mr. Valley filed a Writ of Prohibition or a Writ of Certiorari with the Arkansas Supreme Court. Both were denied by Formal Order in case No. CV-25-119 on April 24, 2025.

Mr. Franklin filed a Motion to Set Aside Emergency Order for Stay or, Alternatively, for Reconsideration. That was denied in Case No. CV025-267 on July 17, 2025.

Both parties have exhausted their appellate remedies.

DISCUSSION

It is the Order of this Court that both parties have 24 hours from issuance of this Order to turn themselves into the Woodruff County jail. Should either party fail to do so, the Woodruff County Sheriff is hereby ordered and directed to travel to Phillips County and take

James Valley and Christopher Franklin to the Woodruff County jail until either each purges himself of the contempt previously ordered by this court or until he sits out the remainder of his contempt at the rate of $40.00 per day. This court orders that each party be taken to Woodruff County because Phillips County has no operational jail and is under State control. Phillips County is ordered to reimburse Woodruff County for each day that each party is held in its facility.

Christopher W. Morledge
Circuit Judge

JUL 2 9 2025

ELECTRONICALLY FILED
Phillips County Circuit Court
Tamekia L. Franklin, Circuit Clerk
2025-Jun-25  13:58:19
54CV-25-208
C06D03 : 19 Pages

# IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS CIVIL DIVISION

STATE OF ARKANSAS EX REL.
TODD H. MURRAY, FIRST JUDICIAL DISTRICT
PROSECUTING ATTORNEY ........................................................................PLAINTIFF

**VS.**          CASE NO. 54CV-2025- 208

CHRISTOPHER FRANKLIN, MAYOR,
CITY OF HELENA-WEST HELENA, ARKANSAS ....................................DEFENDANT

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT,   AND FOR REMOVAL FROM OFFICE, OR IN THE ALTERNATIVE FOR WRIT OF MANDAMUS, AND DAMAGES

The State of Arkansas, by and through Todd H. Murray, Prosecuting Attorney for the First Judicial District, states as follows:

1. Plaintiff is a resident of Phillips County, Arkansas, and is the duly elected, qualified and acting Prosecuting Attorney for the First Judicial District of Arkansas.

2. Christopher Franklin ("Franklin") is a resident of Phillips County, Arkansas, and is the duly elected and acting Mayor of Helena-West Helena, Arkansas.

3. Helena-West Helena, Arkansas ("City") is a political subdivision of the state for the administration of justice and the exercise of local legislative authority related to municipal affairs and is defined as a city of the first class, and a body politic and corporate per Ark. Code Ann. § 14-54-101, operating within the geographic area established by law as Helena-West Helena, Arkansas.

4. The subject matter of this cause of action is a request for declaratory judgment, pursuant to Ark. Code Ann. § 16-111-101, *et seq.*, to declare the construction arising under state statutes and the obligations and legal relations of the interested parties, and to settle and afford relief from uncertainty and insecurity with respects to rights, status, and other legal relations.

2:2c00133-KGB
EXHIBIT B

5. The subject matter also includes alleged violations of the Local Fiscal Management Responsibility Act, Ark. Code Ann. §§ 14-77-101 - 14-77-111, and concerns violations of state laws relating to Municipal Government, Ark. Code Ann. § 14-42-101, *et seq.*, Powers and Duties of Mayor, Ark. Code Ann. § 14-43-504, Fiscal Affairs of Cities of the First Class, Ark. Code Ann. § 14-58-301, *et seq.*, and Prohibited Activities under the Code of Ethics for Public Officials, Ark. Code Ann. § 21-8-301, *et seq.*

The subject matter also includes a request to remove Franklin from the office of mayor pursuant to Ark. Code Ann. § 14-42-109 for willfully and knowingly failing, refusing, or neglecting to execute, or cause to be executed, any of the laws or ordinances within his jurisdiction, and for nonfeasance in office, which nonfeasance includes incompetency, criminal conduct, gross immorality, and malfeasance or misfeasance in office. Pursuant to this subject matter jurisdiction under § 14-42-109(a)(1)(B)(i), it shall be the duty of the circuit court within which any officer may be commissioned and acting to hear and determine the charges.

6. The subject matter also includes, alternatively, a request for writ of mandamus, Ark. Code Ann. §16-115-101, *et seq.*, to command a municipal government official to perform non-discretionary acts, the performance of which are required by law, and which affect the public health and welfare, and for monetary damages to be assessed against Franklin for illegal exactions and/or other financial harm caused by his failure to perform acts required by law.

7. Therefore, this court has jurisdiction of the persons and subject matter hereof, and venue is proper in the Circuit Court of Phillips County, Arkansas.

8. Attached hereto and incorporated herein is an Exhibit List attached as Exhibit A, and Exhibits 1 through 14.

## LAW AND FACTS

9. On or about December 6, 2022, Franklin was elected as mayor of Helena-West Helena and took office on or about January 1, 2023.

10. The office of mayor is an office of trust or profit, as the position is elected; mayors are

2

charged with powers and duties specific to the office; entry into office requires taking the oath of office. The privilege of holding public office comes with certain responsibilities and power unique to the specific office. *Allen v. State*, 327 Ark 350, 359-360, 939 S.W.2d 270, 275 (1997). A public office is a public trust, and funds officially received are trust funds. *Id.* Ark. Code Ann. § 14-43-504. Powers and Duties of Mayor Generally

(a) The mayor of the city shall be its chief executive officer and conservator of its peace. It shall be his special duty to cause the ordinances and regulations of the city to be faithfully and constantly obeyed.

11. Since being elected as mayor, Mayor Franklin has neglected, failed or refused to perform certain actions which are required by law, or to refrain from actions prohibited by law, and which have caused, and are continuing to cause, serious harm to the city, including:

a. Violations of the Local Fiscal Management Responsibility Act, Ark. Code Ann. §§ 14-77-101 - 14-77-111.

Said Act provides, in pertinent part:

§ 14-77-102. Definitions.

(1) "Executive officer" means the following for the applicable political subdivisions:

(B) For municipalities, an "executive officer" is the mayor, city manager, or city administrator;

(2) "Knowingly" means that a person is aware or should have been aware that his conduct will violate the fiscal responsibility and management laws;

(5) "Fiscal responsibility and management laws" means the following laws, as amended, and as applicable to the following subdivisions:

(B) Municipalities:

(i)   Prohibited actions by municipal council members or municipal officials and employees: Interest in offices or contracts, etc. by council members prohibited, § 14-42-107, and Prohibited actions by municipal officials or employees -- Penalty, § 14-42-108;

(ii)  Powers and Duties Generally (of municipal officers), § 14-43-501 et seq.;

3

(iii) Purchase, lease, and sale of real and personal property: Purchase, lease, and sale authorized, § 14-54-302;

(iv) Cities of the first class generally: Fiscal Affairs of Cities and Incorporated Towns, § 14-58-101 et seq.;

(v) The Arkansas Municipal Accounting Law , § 14-59-101 et seq.;

(vi) The Arkansas Municipal Water and Sewer Department Accounting Law, § 14-237-101 et seq.;

(vii) The Arkansas District Courts Accounting Law, § 16-10-201 et seq.; and

(viii) Review of audit reports by legislative governing bodies, § 10-4-418.

§ 14-77-106. Investigation of violations. (c) The prosecuting attorney shall conduct a timely investigation into all matters referred to him under the provisions of this chapter. If the prosecuting attorney fails to conduct a timely investigation or file a civil suit under the provisions of this chapter, the executive officer or the Legislative Joint Auditing Committee may request the Attorney General to conduct an investigation into the violations.

§ 14-77-107. Civil action against violator. After conducting an investigation into the alleged violations, the appropriate prosecuting attorney or the Attorney General may file a civil suit in circuit court against the public officer or employee alleged to have violated the fiscal responsibility and management laws. Venue shall be in the county where the political subdivision is located.

§ 14-77-108. Knowing violations - Punishment. If the public officer or employee is found by the court to have knowingly violated the provisions of the fiscal responsibility and management laws, the court shall impose a civil penalty upon the public officer or employee of not less than one hundred dollars ($100), nor more than one thousand dollars ($1,000) for each violation, and may subject the public officer or employee to the payment of damages resulting as a direct consequence of any violation.

§ 14-77-109. Knowing violations—Cost recovery. (a) If the public officer or employee is found by the court to have knowingly violated the provisions of the fiscal responsibility and management laws, the prosecuting attorney or the Attorney General shall be allowed to recover costs and attorney fees associated with the civil suit from the public officer or employee.

(b) Any costs or fees recovered by a prosecuting attorney under this provision shall be deposited into an account administered by the prosecuting attorney and shall be used for expenses of the office.

§ 14-77-111.Supplement to other remedies. The provisions of this chapter are supplemental to any other remedies available by law. In addition, the provisions of this chapter do not limit or diminish any civil rights or administrative procedures available to any public officer or employee or

4

political subdivision.

b. Violations of the laws and procedures concerning the fiscal affairs of cities of the first

class, Ark. Code Ann. § 14-58-101, et seq.

Said statutes are specifically referenced in the Local Fiscal Management Responsibility

Act, and provide in pertinent part:

§ 14-58-302. Reports--Recommendations. (a) The mayor of a first class city shall

prepare and submit to the municipal governing body within the first ninety (90) days of each year

a complete report on the finances and administrative activities of the city during the previous

fiscal year.

> (b) The mayor shall also keep the governing body advised as to the financial condition and future needs of the city and make such recommendations as to him or her may be desirable.

> § 14-58-303. Purchases--Contracts. (a) In a city of the first class, city of the second class, or incorporated town, the mayor or the mayor's duly authorized representative shall have exclusive power and responsibility to make purchases of all supplies, apparatus, equipment, materials, and other things requisite for public purposes in and for the city and to make all necessary contracts for work or labor to be done or material or other necessary things to be furnished for the benefit of the city, or in carrying out any work or undertaking of a public nature in the city.

> (b)(1)(A) Except as provided under §14-58-104, the governing body of any city of the first class shall provide by ordinance the procedure for making all purchases that do not exceed the sum of thirty-five thousand dollars ($35,000). . . .

>> (2)(A)(i)Except as provided under §14-58-104,in a city of the first class in which the amount of expenditure for any purpose or contract exceeds the sum of thirty-five thousand dollars ($35,000), the mayor or the mayor's duly authorized representative shall invite competitive bidding on the purpose or contract by legal advertisement in any local newspaper.

>>> (ii) Bids received pursuant to the advertisement shall be opened and read on the date set for receiving the bids in the presence of the mayor or the mayor's duly authorized representative.

>>> (iii) The mayor or the mayor's duly authorized representative has exclusive power to award the bid to the lowest responsible bidder, but may reject any and all bids received.

>>> (iv) For the purpose of supplies, apparatus, equipment, materials, and other items under this subdivision (b)(2), the city may base its

award on the following method of evaluation if notice of the method of evaluation is stated in the bid notice:

(a) The lowest immediate cost;

(b) The lowest demonstrated life cycle cost;

(c) The lowest demonstrated term costs;

(d) A combination of two (2) or more of the lowest immediate cost, the lowest demonstrated life cycle cost; and the lowest demonstrated term costs.

(v) A bid, quote, and the documentation related to a bid or quote shall be maintained as required under §14-59-114(a)(1).

(B) The governing body by resolution may waive the requirements of competitive bidding in exceptional situations where this procedure is deemed not feasible or practical or as provided under §14-58-104.

§ 14-58-305. Payment of bills and debts. (a) In a city of the first class, city of the second class, or incorporated town, the mayor or his or her duly authorized representative may approve or disapprove for payment out of funds previously appropriated for that purpose any  legal claims asserted or brought against the city or town.

(b) The municipal governing body shall, by ordinance, establish in that connection a maximum amount, and the payment or disapproval of such bills, debts, or liabilities exceeding that amount shall require the confirmation of the governing body.

§ 14-58-307. Audit. In cities of the first class, the municipal governing body shall have the financial affairs of the city audited annually by an independent certified public accountant, who is not otherwise in the service of the city, or by the Division of Legislative Audit of the State of Arkansas.

§ 14-58-308. Bonds of Officers and Employees. (a) All officers and employees of a city of the first class, city of the second class, or incorporated town handling financial matters for the city or town shall furnish a fidelity bond in such amount, on such form, and with such security as may be approved by the municipal governing body.

c.  Violations of laws concerning Ethics and Conflicts of Interest, Ark. Code Ann.

§ 21-8-301, *et seq*.

Said statutes provide, in pertinent part:

§ 21-8-304. Prohibited Activities. (a) No public servant shall use or attempt to use his or her official position to secure special privileges or exemptions for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be

6

otherwise provided by law.

(b) No public servant shall accept employment or engage in any public or professional activity while serving as a public official which he or she might reasonably expect would require or induce him or her to disclose any information acquired by him or her by reason of his or her official position that is declared by law or rule to be confidential.

(c) No public servant shall disclose any such information gained by reason of his or her position, nor shall he or she otherwise use such information for his or her personal gain or benefit.

§ 21-8-302. Penalties. (a) Any person who knowingly or willfully violates any provision of this subchapter shall be guilty of a Class B misdemeanor.

§ 21-8-303. Enforcement of provisions. (a)(1) It shall be the duties and responsibilities of the prosecuting attorneys of this state to supervise compliance with this subchapter and to prosecute persons who violate the provisions of this subchapter.

d.  Violations of city ordinances. Said violations include:

> 1. Failing to timely conduct competitive bidding and/or to only waive competitive bidding in exceptional situations where this procedure is deemed not feasible or practical.

> 2. Failing to obtain timely council approval for contracts or expenditures or expenditures in excess of the Mayor's spending authority.

> 3. Failing to obtain timely council confirmation for the non-payment or disapproval of any bills, debts, or liabilities asserted as claims against the city exceeding the amount requiring the confirmation of the governing body.

> 4. Failing to seek timely council approval for contracts or expenditures involving a relative standing in the first degree of relationship of a city official, and/or authorizing payment prior to services being rendered, and/or making preferential payment for invoices of said relative.

e. Failing to abide by a mandate of the Arkansas Supreme Court. *City of Helena-West Helena and Christopher Franklin as Mayor of the City of Helena-West Helena v. Greg Williams*, 2024 Ark. 102, Appeal from the Phillips County Circuit Court, 54CV-23-07-3.

7

  f. Failing to timely pay vendors of the city, including bills for housing criminal defendants, facilities for the police department, utilities, and/or other services and charges necessary for the orderly operation of the city and the peace and welfare of its citizens.

  g. Engaging in other acts in violation of the duties as mayor, as conservator of the peace in accordance with Title 14 of the Arkansas Code, and also including acts of criminal conduct, gross immorality, incompetency, nonfeasance, malfeasance or misfeasance in office, including:

    1. Failing to pay state income tax, or failing to file state income tax return(s), or attempting to evade state taxes.

    2. Engaging in Disorderly Conduct, § 5-71-207, and/or Harassment, § 5-71-208, and/or Harassing Communications, § 5-71-209.

    3. Engaging in conduct to harbor a fugitive from justice.

  h. Otherwise demonstrating incompetence, inability, or negligent, reckless, or purposeful conduct which undermines public trust and shows unfitness to hold office.

  12. Arkansas Legislative Audit ("ALA") advised that prior to 2023, the city street department was doing mowing in the city. Without council approval, Franklin solicited bids for mowing. ALA advised Walker English's mowing company is one of the three mowing companies that participated in the bidding process to mow properties owned and previously maintained by the city. ALA advised Walker English is a former employee of Franklin's mowing business which was in operation prior to Franklin becoming mayor. Walker English was incorporated in 2023.

  Upon information and belief, the bid of Walker English for weekly mowing, accepted by Franklin, was in excess of $389,000. Although there are no contracts that were entered, Walker English started receiving funds from the city 2023. The businesses whose bids were accepted by the mayor were added to the city's vendor list are: Walker English, King Kutz, Family Runs Deep, and CAT Oakridge Enterprises. Franklin did not request or receive council approval for the bids he approved. It is also believed the city has purchased substantial new

8

mowing equipment. ALA advised the city has not laid off any street department employees, and has even added new employees.

13. Corey Clemons is the owner of CAT Oakridge Enterprises (mowing) and AR Logistics Enterprises (demolition). Both entities are on the city's vendor list. According to ALA, Clemons seems to only do business with the city of HWH.

Clemons' sister, LaToya Harris, is on the city council. At the time Clemons' businesses were added to the city's vendor list there was no resolution passed by the council to notify the city that Clemons and Harris were related. This issue has been subsequently addressed, and both Clemons and Harris have notified the city council. It is unknown what exceptional circumstances exist for Clemons to be added to the vendor list for both mowing and demolition. According to ALA, Corey Clemons has been paid for services prior to services being rendered. The city has had trouble making payroll payments and paying other obligations, such as payroll taxes and LAPFI payments, but Clemons and other vendors seem to get paid as soon as invoices are received by the city.

14. On or about April 2, 2024, the city had a council meeting. At that meeting, Mayor Franklin presented the council with approximately $93,945 in invoices from vendors. Upon information and belief, none of the spending was authorized through a prior approval of the council, and none of the work was obtained by competitive bidding. Although Franklin served on the council for years before becoming mayor, and has criticized prior mayors for such practices, he stated "I didn't know. I didn't know until I saw the invoices." At that same meeting, the city clerk reported the city had little cash except for payroll.

15. On or about April 24, 2023, the Phillips County Circuit Court entered an Order granting a declaratory judgment in favor of Greg Williams against the City of Helena-West Helena and Christopher Franklin as Mayor, Phillips 54CV-23-7-3. Said judgment held that former Mayor Kevin Smith's veto was valid, and the actions taken by the city council on December 30, 2022, including Ordinances 39-2022 and 40-2022, were null and void.

The Court Order made the salary increases and new employee positions created by these ordinances invalid. In particular, the Court Order made the increase of the conflict-of-interest

9

limit for contracts with the City for services provided by an employee, elected official, or their family members from $2,500 to $100,000 included in Ordinance 39-2022 invalid; and the Court Order made the mayor's base pay increase from $48,000 to $70,000 included in Ordinance 40-2022 invalid. Said judgment was affirmed by the Arkansas Supreme Court, CV-23-575, 2024 Ark. 102.

The Court's order, effective on or about January 11, 2023, restrained any action or salary increases based on Ordinance Numbers 39-22 and 40-22. The mandate of the Supreme Court has been issued to the city. It is believed, and therefore alleged, that increased emoluments and other funds continue to be paid despite the ruling.

16. On or about June 26, 2023, Phillips County sued the city concerning unpaid bills for the housing of locally arrested inmates in the Phillips County jail facility in the amount of $137,295, plus additional charges accruing from the date of Complaint, interest, and legal fees. Prior to the commencement of legal action, Franklin was sent a letter concerning the past due payments, to which he never responded. A settlement agreement was reached as a result of mediation, but upon information and belief, the city has never satisfied the debt. On or about April 16, 2025, the Court issued correspondence to the parties indicating that the Plaintiff's motion for summary judgment was granted. The failure and refusal to pay for these vital public services has caused hardship to the county and citizens.

17. Mayor Franklin, on or between the May 17, 2021 to present, in Phillips County, Arkansas, did commit the crimes of Failure to Pay or File Return, a Class D Felony, in violation of Ark. Code Ann. § 26-18-202, that he did unlawfully fail to pay state income taxes, or fail to file state income tax returns, in violation of the tax laws and procedures of the State of Arkansas, against the peace and dignity of the State of Arkansas.

The criminal offenses are the subject of charges of Failing to Pay or File Return, being filed in Phillips County Circuit Court, Criminal Division.

18. Fredrick Gamble, Jr., was charged by prosecutors and convicted of the felony offense of Unlawful Discharge of a Firearm in Vehicle, and other offenses, in Phillips Circuit No. 54CR-21-180. He was also charged and convicted of Battery in the First Degree, a felony,

10

in 54CR-21-181. Gamble was later charged with the felony offense of Possession of Firearm by Certain Persons in 54CR-22-157. In February of 2023, Gamble was declared a fugitive from justice, his bail was forfeited, and a warrant for his arrest was issued.

During the time Gamble was a fugitive, pictures were posted on social media showing Gamble at the beach with his mother, a former Helena-West Helena police officer, her sister, and Mayor Franklin. Franklin, by virtue of his position as mayor and conservator of the peace, is the highest-ranking official in the chain of command of the HWH police department. It is believed, and therefore alleged, that Franklin knew or should have known that he was harboring a fugitive from justice. Since the prosecutor's office had no proof that any of this conduct occurred in the State of Arkansas, Franklin could not be charged with the criminal offense of Hindering Apprehension or Prosecution, a felony, in this state.

19. On or about June 25, 2023, Mayor Franklin committed the offenses of disorderly conduct and battery 3rd degree within the city limits of Helena-West Helena. The event was captured on video of Mayor Franklin striking Tacara Murphy multiple times about the head and face without justification.

20. On or about May 21, 2024, a video surfaced and went viral after being reported by Fox 13 News (Memphis). The video depicts an angry, profanity-laced exchange between Franklin and his daughter, Jaylah Franklin, and his niece, Shania Stephens. At one point during the heated exchange, Franklin tells the two young women more than once that they can get on their knees and "Eat his d***." Franklin also refers to one of the women as "Special Ed" and appears to reference their death. KATV (Little Rock) and several other news outlets ran stories. The unedited video is still available for the public to view on social media.

The video caused widespread public alarm. The Helena Daily World ran several articles and stated the [public posting of the video] "apparently occurred while Franklin was in Hot Springs [Arkansas] representing the city at a conference on rural development," and has "brought substantial negative attention to the city."

Shortly after the video went viral, Franklin issued a statement admitting to making the

11

statements and apologizing "for the way I expressed myself." In an email sent to the city clerk, council members and Franklin, Councilwoman Maxine Miller wrote, "My conscience is not allowing me to just look over everything and the public outcry is deafening . . . please add to the agenda for Tuesday, May 28, 2024, an item of business requesting the resignation of Mayor Franklin." At that meeting, the council voted unanimously (6-0) for the resignation of Mayor Christopher Franklin. The resolution reads, in part:

> Whereas, the City Council has determined that Mayor Christopher Franklin has recorded, published, and disseminated a derogatory Facebook Live video in which he tells his adult daughter and adult niece to "Eat his d***" and made other foul-mouthed statements using a litany of profanity and antagonistic language; and

> Whereas, the video of Mayor Christopher Franklin is prurient, grotesque, misogynistic, narcissistic, nauseating and in no wise expressive of all the people of our city; and

> Whereas, the said statements should not be representative of one who executes policies, procedures, rules, regulations and state statutes that affect all the citizens in community.

> Therefore, be it Resolved that: the City Council of Helena West Helena, Phillips County, AR, hereby strongly censures (officially condemns) Mayor Christopher Franklin for his conduct referenced above and, The City Council of Helena West Helena, Phillips County, AR undeniably requests the IMMEDIATE RESIGNATION of Mayor Christopher Franklin.

In response, the newspaper reported that Franklin said, "Thank you all for that. I am happy to inform you, I am not leaving. I will still be here. Meeting adjourned." The paper further reported, "As Franklin abruptly adjourned the meeting, which had many additional items on an agenda of 100-plus pages . . . Franklin quickly got up and departed the Council meeting chambers through a side door."

21. It is alleged that the video is proof that Franklin engaged in criminal conduct, or at the very least, grossly immoral behavior. Applicable criminal laws provide, in part:

> § 5-71-207. Disorderly Conduct. (a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk thereof, he:

> > (1) Engages in fighting or in violent, threatening, or tumultuous behavior;

12

or

(3) In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response; or

(7) Creates a hazardous or physically offensive condition . . .

(b) Disorderly conduct is a Class C misdemeanor.

§ 5-71-208. Harassment. (a) A person commits the offense of harassment if, with purpose to harass, annoy, or alarm another person, without good cause, he:

(2) In a public place, directs obscene language or makes an obscene gesture to or at another person in a manner likely to provoke a violent or disorderly response; or

(4) In a public place repeatedly insults, taunts, or challenges another in a manner likely to provoke a violent or disorderly response; or

(5) Engages in conduct or repeatedly commits acts that alarm or seriously annoy another person and that serve no legitimate purpose. . .

(b) Harassment is a Class A misdemeanor.

§ 5-71-209. Harassing Communications. (a) A person commits the offense of harassing communications if, with the purpose to harass, annoy, or alarm another person, he:

(1) Communicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of written communication, in a manner likely to harass, annoy, or cause alarm; or

(3) Knowingly permits any telephone under his control to be used for any purpose prohibited by this section.

(b) Offenses involving use of telephones may be prosecuted in the county in which the defendant was located when he used a telephone, or in the county in which the telephone made to ring by the defendant was located.

(c) Harassing communications is a Class A misdemeanor.

Additionally, the office of mayor has the power to take action to prevent injury or annoyance from things that are offensive and unhealthy, *See*, General Powers of Cities and Towns, § 14-54-101, *et seq*. Instead, the mayor engages in repeated conduct which directly causes widespread public annoyance and alarm.

22. Such actions by the Defendant do not comply with state law, all of which results in

13

the overall loss of or reduction of essential, basic and necessary services guaranteed by the city,

to the detriment of the citizens and employees of Helena-West Helena, Arkansas.

23. This court may determine, pursuant Ark. Code Ann. §16-111-101, *et seq.*, any

question of construction or validity arising under the stated Arkansas statutes and may declare

the rights, obligations and legal relations of the parties thereunder.

24. Malfeasance, misfeasance, or nonfeasance are general terms not defined in the code.

Caselaw holds the terms have reference to official conduct. *Jones v. State*, 104 Ark. 261, 149

S.W. 56, 57 (1912); *Kirkpatrick v. State*, 177 Ark. 1124 (1928).

> The Arkansas Supreme Court relied on the following for definitions of the terms:
> "Nonfeasance . . . is the omission of an act which a person ought to do; misfeasance is
> the improper doing of an act which a person might lawfully do; and malfeasance is the
> doing of an act which a person ought not to do at all." *Stiewel v. Borman*, 63 Ark. 30, 37
> S.W. 404 (1896). Black's Law Dictionary, in relevant part, defines misfeasance as
> "the improper performance of some act which a man may lawfully do. Nonfeasance is
> "nonperformance of some act which ought to be performed, omission to perform a
> required duty at all, or total

neglect of duty."

> Ark. Op. Att'y Gen. No. 2005-189 (Nov. 3, 2005).

> Finally, I will note generally that the failure to perform the duties of one's office
> might amount to nonfeasance, if based purely upon negligence, or to
> malfeasance, if the failure is based upon some intentional, impermissible
> motivation. . .

> This provision refers to conduct occurring in a present term of office. *Rice v.
> State*, 204 Ark. 236, 161 S.W.2d 401 (1942), and *Jacobs v. Parham*, 175 Ark. 86,
> 298 S.W. 483 (1927). It is not limited to felonies, or even to criminal conduct.
> See, e.g., *Jones v. State*, 104 Ark. 261, 149 S.W. 56 (1912).

25. "Writ of Mandamus" means an Order of the Circuit Court granted upon the Petition

of an aggrieved party or the state when the public interest is affected, commanding an executive,

judicial, or ministerial officer to perform an act or omit to do an act, the performance or

omission of which is enjoined by law. Ark. Code Ann. §16-115-101.

26. Ark. Code Ann. §16-115-103 provides that "Petitions for Writs of Mandamus or

Prohibition shall have precedence over all other actions and proceedings and shall be heard and

14

determined summarily."

## CONSTRUCTION, OBLIGATIONS, AND REMEDIES

27. Plaintiff is responsible to the citizens and employees of the city, as the elected Prosecuting Attorney for the First Judicial District, to uphold and enforce the law, especially when the public interest is affected by virtue of the acts or omissions of government officials which are contrary to law, and is an interested parties whose office, official duties and legal relations are affected by the above-cited statutes.

28. Defendant is responsible to citizens, as the elected mayor, to perform the non-discretionary acts set forth in the above-cited statutes which affect the public health and welfare, and is an interested party whose official duties, responsibilities in office, and legal relations are also affected. His duties are indispensable to the citizen, especially at this critical juncture.

29. Plaintiff seeks a construction of the said statutes, and a declaration of the Defendant's obligations thereunder.

30. Plaintiff also seeks Defendant's removal from office for failing to comply with mandatory duties imposed by statutes, including but not limited to those duties listed above, which has caused, and continues to cause, serious harm to the city.

31. It is also significant to note that substantial financing is needed at this time to address the city's huge, crucial infrastructure needs, and state resources are affected by the city's problems and credibility. If Franklin is not removed, financial and other consequences will continue to occur, and the legitimacy of most if not all city business is called into question.

32. Alternatively, Plaintiff seeks Writ of Mandamus commanding the Defendant to perform the mandatory duties imposed by the above-cited Arkansas statutes, and for damages caused by the Defendant's conduct while in office.

33. Plaintiff also seeks civil penalties for each violation of the Local Fiscal Management Responsibility Act, and which may subject the public officer to the payment of damages resulting as a direct consequence of any violation. The court shall impose penalties for such

15

violations pursuant to Ark. Code Ann § 14-77-108, Civil Penalty.

34. All attorneys' fees and costs of this action should be paid by Defendant, in a reasonable amount within the Court's discretion.

35. Plaintiff demands an immediate hearing before the Court to determine the charges.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the court will construe the above-cited statutes; declare that the Defendant is legally obligated to the people, officials, and employees of the City of Helena-West Helena and the State of Arkansas by virtue of the said statutes and his failure to perform non-discretionary acts thereunder; remove the Defendant from office, without pay, and enjoin him from exercising any powers, responsibilities, or authorities as mayor; or, in the alternative, issue a Writ of Mandamus commanding the Defendant to perform the mandatory duties imposed by the said statutes; for damages and civil penalties; that reasonable attorneys fees and costs be paid by Defendant; for an immediate hearing; and for any and all other just and proper relief.

Respectfully submitted,

PROSECUTING ATTORNEY
STATE OF ARKANSAS
FIRST JUDICIAL DISTRICT

BY: _____

TODD H. MURRAY (91232)
Prosecuting Attorney, First Judicial District
620 Cherry St., Suite 206
Helena, AR 72342
870-338-5584

AMY GREEN (11058)
CHARLES E. HALBERT, JR. (92004)
Phillips County Deputy Prosecutors
620 Cherry Street
Helena, AR 72342
(870) 338-5584

16

JEANNA SHERRILL
Senior Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201

ALEXA VETSCH
Assistant Attorney General
101 West Capitol Avenue
Little Rock, AR 72201

## VERIFICATION

I, Todd H. Murray, after first being duly sworn, state:

1. I am the Prosecuting Attorney for the First Judicial District of Arkansas and represent the State of Arkansas in this matter.

2. I have read the foregoing Complaint and know the contents thereof. The facts stated therein are true and correct to the best of my knowledge, information and belief.

TODD H. MURRAY

State of Arkansas       )
                        ) SS:
County of Phillips      )

On this 24 day of June, 2025, before me a notary public, Todd H. Murray, having appeared before me, and acknowledged that he executed the same for the purposes therein contained.

In witness hereof, I hereunto set my hand and official seal.

AMY SNOWDEN
Notary Public - Arkansas
Phillips County
My Commission Expires 02-13-2035
Commission # 00005009

Notary Public

My commission expires 2/13/35

17

# IN THE CIRCUIT COURT OF PHILLIPS  COUNTY, ARKANSAS
## CIVIL DIVISION

STATE OF ARKANSAS EX REL.
TODD H. MURRAY, FIRST JUDICIAL DISTRICT
PROSECUTING ATTORNEY . . . . . . . . . . . . . . . . . . . .
. . . . . PLAINTIFF

VS.              **CASE NO. 54CV-2025- 208**

CHRISTOPHER FRANKLIN, MAYOR,
CITY OF HELENA-WEST HELENA, ARKANSAS . . . . . . . . . . . . .
. DEFENDANT

## EXHIBIT A

1.  Arkansas Legislative Joint Auditing Committee, Arkansas Legislative Audit:

City of Helena-West Helena, Arkansas, Audit Year Ending December 31, 2023

2.  *State of Arkansas v. Christopher Franklin*, Phillips County Circuit Court, Criminal

Division.

3.  Department of Finance and Administration – subpoena for tax records responses

4.  *City of Helena-West Helena and Christopher Franklin as Mayor of the City of Helena-West Helena v. Greg Williams*, 2024 Ark. 102, Appeal from the Phillips County Circuit Court, 54CV-23-07-3

5.  *Phillips County, Arkansas v. City of Helena-West Helena, Arkansas*, 54CV-2023-117.

6.  Documents related to mowing services

7.  Documents related to demolition contractor services

8.  Docket sheets, State of Arkansas vs. Frederick Gamble, Phillips Circuit Nos. 54CR-21-180 and 54CR-21-181

9.  Photographs of Christopher Franklin, Frederick Gamble, and others

10. June 25, 2023 video

11. FaceBook Live Video

12. News reports of Fox 13 News (Memphis), KATV (Little Rock), Helena Daily World, and other news accounts

13. Resolution calling for the resignation of Mayor Christopher Franklin, and official record

14. Press Releases, interviews, and public statements issued by Mayor Christopher Franklin

# FORMAL ORDER

STATE OF ARKANSAS,          )

                                                     )

SUPREME COURT                )


      **BE IT REMEMBERED,** THAT A SESSION OF THE SUPREME COURT BEGUN AND HELD, ON MAY 13, 2025, WAS THE FOLLOWING PROCEEDING, TO-WIT:


SUPREME COURT CASE NO. CV-25-267

CHRISTOPHER FRANKLIN, AS MAYOR OF THE CITY OF HELENA-WEST HELENA                                                              PETITIONER

V. APPEAL FROM PHILLIPS COUNTY CIRCUIT COURT – 54CV-23-7

GREG WILLIAMS                                                          RESPONDENT


      PETITIONER'S EMERGENCY APPLICATION FOR TEMPORARY RELIEF STAYING THE CIRCUIT COURT PROCEEDINGS.  REQUEST FOR EXPEDITED CONSIDERATION GRANTED; PETITIONER'S EMERGENCY MOTION FOR TEMPORARY RELIEF STAYING THE CIRCUIT COURT PROCEEDINGS IS GRANTED.


      IN TESTIMONY, THAT THE ABOVE IS A TRUE COPY OF THE ORDER OF SAID SUPREME COURT, RENDERED IN THE CASE HEREIN STATED, I, KYLE E. BURTON, CLERK OF SAID SUPREME COURT, HEREUNTO SET MY HAND AND AFFIX THE SEAL OF SAID SUPREME COURT, AT MY OFFICE IN THE CITY OF LITTLE ROCK, THIS 13TH DAY OF MAY, 2025.


      *Kyle E. Burton*
      _____
                               CLERK

      BY: _____
                            DEPUTY CLERK


ORIGINAL TO CLERK

CC: TERRENCE CAIN
    KYLE STONER
    HON. CHRISTOPER W. MORLEDGE, CIRCUIT JUDGE

## FORMAL ORDER

STATE OF ARKANSAS,   )

                       )

SUPREME COURT       )

**BE IT REMEMBERED,** THAT A SESSION OF THE SUPREME COURT BEGUN AND HELD, ON AUGUST 1 , 2025, WAS THE FOLLOWING PROCEEDING, TO-WIT:

SUPREME COURT CASE NO. CV-25-267

CHRISTOPHER FRANKLIN, AS MAYOR OF THE CITY OF HELENA-WEST HELENA                                           PETITIONER

V. APPEAL FROM PHILLIPS COUNTY CIRCUIT COURT – 54CV-23-7

GREG WILLIAMS                                    RESPONDENT

PETITIONER'S EMERGENCY MOTION TO ENFORCE THE STAY AND REQUEST FOR EXPEDITED CONSIDERATION. EXPEDITED CONSIDERATION GRANTED; MOTION TO ENFORCE STAY GRANTED. WOOD, J., WOULD DENY MOTION TO ENFORCE STAY.

STAY TO REMAIN IN PLACE UNTIL THIS COURT DISPOSES OF THE APPEAL IN CV-25-343.

IN TESTIMONY, THAT THE ABOVE IS A TRUE COPY OF THE ORDER OF SAID SUPREME COURT, RENDERED IN THE CASE HEREIN STATED, I, KYLE E. BURTON, CLERK OF SAID SUPREME COURT, HEREUNTO SET MY HAND AND AFFIX THE SEAL OF SAID SUPREME COURT, AT MY OFFICE IN THE CITY OF LITTLE ROCK, THIS 1ST DAY OF AUGUST, 2025.

*Kyle E. Burton*
                                               CLERK

ORIGINAL TO CLERK

CC: TERRENCE CAIN
     KYLE STONER
     HON. CHRISTOPER W. MORLEDGE, CIRCUIT JUDGE

2:2c00133-KGB
**EXHIBIT D**