**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**CHRISTOPHER FRANKLIN** **PLAINTIFF**

**v.** **Case No. 2:25-cv-00133-KGB**

**CHRISTOPHER MORLEDGE, *et al.*** **DEFENDANTS**

# ORDER

Before the Court are defendant Christopher Morledge and Todd Murray's (collectively "Defendants") motion to dismiss for failure to state a claim and motion to dismiss the amended complaint for failure to state a claim (Dkt. Nos. 3; 10). Following the first motion to dismiss, plaintiff Christopher Franklin filed an amended complaint (Dkt. No. 8). Defendants filed a motion to dismiss the amended complaint (Dkt. No. 10). Franklin responded (Dkt. No. 12). Defendants filed a reply (Dkt. No. 18). For the following reasons, the Court denies as moot Defendants' first motion to dismiss (Dkt. No. 3). The Court grants, in part, Defendants' motion to dismiss the amended complaint (Dkt. No. 11). The Court dismisses without prejudice Franklin's federal law claims. The Court declines to exercise jurisdiction over Franklin's state law claims and dismisses without prejudice those claims.

## I. Factual Background

Franklin was elected as mayor of Helena-West Helena and sworn in on January 1, 2023 (Dkt. No. 8, ¶ 1). Defendant Morledge is an elected Arkansas Circuit Judge for the 1st Judicial Circuit (*Id.*, ¶ 9). Defendant Murray is the elected Arkansas Prosecuting Attorney for the 1st Judicial Circuit (*Id.*, ¶ 10).

Franklin alleges that Defendants "devised and intended to devise a common scheme, plans and courses of action designed and intended to deprive and deny Plaintiff and various unrelated

African-American citizens of Phillips County, Arkansas, of their Constitutional rights secured [to] them under the United States Constitution, including rights secured under the [First, Fourth, Fifth, and Fourteenth] amendments" (*Id.*, ¶ 13). Franklin further alleges: "It was part of their common plan and scheme that the defendants would and did, from time to time, create and file in the Circuit Court of Phillips County, Arkansas, various artifices and documents which facilitated their civil rights violation schemes." (*Id.*, ¶ 14).

Franklin claims that Defendants "would and did, from time to time, file such spurious documents into the 1st Judicial Circuit Court records system in Phillips County, Arkansas. In creating and filing such documents, the Defendants did these acts knowingly, willfully, wrongfully and with intent to deny and deprive Plaintiff of his well-established civil rights." (*Id.*, ¶ 15). Moreover, Franklin alleges that Defendants "well knew of the falsity and wrongfulness of their actions at the time such acts were performed [and] well knew that their actions were taken in the absence of any lawful authority to occasion such acts." (*Id.*)

Franklin alleges that Defendants "would prepare these documents together, each knowing the other was using their respective political office as the means of concealing their true intent of inflicting deprivation of civil rights under the color of law." (*Id.*, ¶ 16). Franklin alleges that, on or about 1:00 p.m. on June 24, 2025, Murray tendered to Morledge for filing in Court "a bundle of spurious documents marked up as" a verified complaint, motion for temporary restraining order, and temporary restraining order (*Id.*). Franklin asserts that Murray "made intentional false statements; made incomplete and misleading statements; failed to make other statements required to be made in order to make other statements 'not misleading.'" (*Id.*, ¶ 16).

Franklin alleges that these documents were filed in "Arkansas Circuit Court case number 54CV-2025-208 (State v. Franklin)" and were in "willful violation of the Arkansas State Supreme

Court's Administrative Order No. 14 and 1st Judicial Circuit Court Administrative Rule 1, which two rules require the random selection of judges within the Judicial Circuit." (*Id.*, ¶ 17). Franklin alleges that, in unrelated removal from office cases, Defendants engaged in the "same scheme whereby Murray would funnel the spurious documents to Morledge who would then 'file' them in his Court, and later obtain a case number from the Circuit Clerk." (*Id.*). Franklin alleges that "[b]y using this scheme, they were able to conceal their activities from other Judges in the Circuit and assure that they could evade detection of their unlawful schemes and actions, and thereby completely control the outcome of the spurious lawsuits." (*Id.*)

Franklin claims that, "[i]n this instance, Murray prepared a fraudulent collection of documents and used them, with Morledge's signature on a simulated 'temporary restraining order' and immediately thereafter instantly removed Plaintiff Franklin from public office." (*Id.*, ¶ 18). Franklin alleges that he was never given an opportunity to be heard, employ counsel, or have a legitimate adversarial proceeding before being removed from office (*Id.*).

Franklin alleges that Defendants abridged his federal constitutional rights in violation of 42 U.S.C. § 1983, engaged in a conspiracy to deprive his federal constitutional rights in violation of 42 U.S.C. § 1985, abridged his rights under the Constitution of the State of Arkansas, and committed the tort of outrage. Franklin seeks declaratory, injunctive, and monetary relief.

## II. Procedural Background

Franklin filed a complaint on June 30, 2025 (Dkt. No. 1). On July 23, 2025, Defendants filed their motion to dismiss (Dkt. No. 3). On August 13, 2025, 21-days after Defendants' motion to dismiss, Franklin filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Given Franklin's amended complaint, the Court denies as moot Defendants' first motion to dismiss (Dkt. No. 3). *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952,

956 (8th Cir. 2002) (determining that, once an amended complaint is filed, the motion to dismiss against the original complaint is moot).

Defendants filed a motion to dismiss Franklin's amended complaint (Dkt. No. 10). Defendants argue that Franklin's claims are barred by sovereign immunity, judicial immunity, prosecutorial immunity, qualified immunity, and statutory immunity (Dkt. No. 11, at 2). Defendants also argue that Franklin fails to plead sufficient facts to state a claim.

## III. Official Capacity Claims

Franklin brings claims against Defendants in their official capacities (Dkt. No. 8). Franklin seeks monetary relief and injunctive relief. The Court dismisses Franklin's official capacity claims for monetary relief as barred by the Eleventh Amendment. The Court dismisses Franklin's official capacity claims for injunctive relief against Morledge as barred by Judicial Immunity. The Court dismisses Franklin's official capacity claims for injunctive relief against Murray, to the extent they seek to enjoin Murray from engaging in traditional prosecutorial functions, under prosecutorial immunity. The Court dismisses Franklin's official capacity claims for injunctive relief against Murray, to the extent Franklin seeks to enjoin Murray from making false statements in a verified complaint, for lack of standing.

### A. Sovereign Immunity

Defendants argue that the Eleventh Amendment bars Franklin's claims to the extent that they are brought against defendants in their official capacities (Dkt. No. 11, at 7). Franklin responds that because the case header names defendants in their individual capacities, the Eleventh Amendment does not apply (Dkt. Nos. 2, at 1; 12, at 21). Yet, Franklin also responds that the case header "expressly states each defendant is sued both individually and in their official capacities."

(Dkt. No. 12, at 21). The Court concludes that Franklin raises official capacity and individual capacity claims against Defendants.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). "The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court." *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023) (internal quotations omitted). However, Eleventh Amendment immunity is not absolute. In "*Ex parte Young*, [the Supreme Court] recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39; *see Ex parte Young*, 209 U.S. 123, 159–60 (1908).

"'In determining whether this exception applies, a court conducts a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 990 (8th Cir. 2022) (quoting *281 Care Comm. v. Arneson (Care Committee 1)*, 638 F.3d 621, 632 (8th Cir. 2011)).

**1. Monetary Relief**

To the extent that Franklin seeks monetary relief from Defendants in their official capacity, that claim is barred by the Eleventh Amendment. Franklin in his amended complaint seeks monetary damages only for Count Six, which is asserted solely against Morledge (Dkt. No. 8, at 16–18, ¶¶ 25–26; 21, ¶ 30). Defendant Morledge in his official capacity is the state for Eleventh Amendment purposes because he is the "arms and instrumentalities" of the state. *Johnson*, 69 F.4th at 512. Accordingly, Morledge in his official capacity cannot be sued for money damages.

This same rationale applies to bar any claims for monetary damages against Murray in his official capacity. The Court dismisses without prejudice Franklin's official capacity money damages claims.

**2. Injunctive Relief**

The Court construes Franklin's amended complaint to seek injunctive relief against Defendants in their official capacity. Defendants argue that sovereign immunity bars Franklin's claim for injunctive relief because it does not fall under the *Ex parte Young* framework (Dkt. No. 11, at 8). The Court finds that Franklin's amended complaint states a claim that is not, on its face, barred by the Eleventh Amendment and sovereign immunity.

First, Morledge argues that he is entitled to sovereign immunity because the *Ex parte Young* exception does not apply to judges (Dkt. No. 11, at 8). The Court acknowledges that the "traditional exception does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Woman's Health*, 595 U.S. at 39. However, the Court is not convinced that *Whole Woman's Health*'s bar on suits against state-court judges or clerks acts to prevent Franklin's official capacity claims. First, In *Whole Woman's Health*, the issue was whether plaintiffs could seek injunctive relief against state court judges and clerks from enforcing and adjudicating suits brought under an allegedly unconstitutional state statute. Here, Franklin does not allege that Morledge is, by adjudicating a claim, enforcing an unconstitutional state statute; rather, Franklin alleges that Morledge's conduct violates his due process and equal protection rights under the federal Constitution. Franklin seeks prospective relief to enjoin Morledge's allegedly unconstitutional conduct, not to enjoin enforcement of a statute.

Second, Defendants argue that the exception to sovereign immunity only applies when a state official seeks to enforce a state law that is contrary to federal law (Dkt. No. 11, at 9). However, that is not how the exception applies. The Eighth Circuit explains:

> [A] suit against a state official may go forward in the limited circumstances identified by the Supreme Court in *Ex Parte Young*. Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law. In determining whether this exception applies, a court conducts "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."

*Care Committee 1*, 638 F.3d at 632 (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). Franklin is not required to demonstrate that Defendants are attempting to enforce an unconstitutional state law. Under the "straightforward inquiry" the Court asks whether the complaint alleges an ongoing violation of federal law, and if so, whether the complaint seeks relief properly characterized as prospective. Here, Franklin alleges that his federal Constitutional rights are being violated by Defendants and that they threaten to continue to be violated. Franklin requests prospective injunctive relief to enjoin such conduct. For these reasons, to the extent that Franklin seeks prospective injunctive relief against Defendants in their official capacities, the Court finds that those claims are not barred by sovereign immunity.

**B. Judicial Immunity**

Morledge next argues that he is entitled to absolute judicial immunity, both in his official and individual capacity (Dkt. No. 11, at 9–13). Franklin asserts that Morledge's interpretation of judicial immunity is overly broad and that the allegations, in the light most favorable to Franklin, establish that the exceptions to judicial immunity apply (Dkt. No. 12, at 9–15). The Court finds that Morledge is entitled to judicial immunity regarding Franklin's remaining official capacity claims for injunctive relief and Franklin's individual capacity claims.

"'[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages.'" *Justice Network Inc. v. Craighead County*, 931 F.3d 753, 759–60 (8th Cir. 2019). (quoting *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam)). Judicial immunity "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Mireles*, 501 U.S. at 11. "'A judge is immune from suit, including suits brought under section 1983 to recover for alleged deprivation of civil rights, in all but two narrow sets of circumstances.'" *Justice Network Inc.*, 931 F.3d at 760 (quoting *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012) (internal citation omitted)). "'First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'" *Justice Network Inc.*, 931 F.3d at 760 (quoting *Mireles*, 502 U.S. at 11–12) (internal citations omitted).

Judicial immunity applies to claims for money damages. *Martin v. Henderson*, 127 F.3d 720, 721 (8th Cir. 1997). Additionally, judicial immunity applies to claims for injunctive relief. *Justice Network Inc.*, 931 F.3d at 763 (citing *Lawrence v. Kuenhold*, 271 F.App'x 76, 766 n.6 (10th Cir. 2008) ("[T]he doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well.")).

**1. Judicial Capacity**

Morledge argues that the conduct Franklin alleges he engaged in was done in a judicial capacity (Dkt. No. 11, at 10). Franklin disputes this characterization and states the conduct was outside of Morledge's judicial capacity (Dkt. No. 12, at 10–11).

To determine whether an act is judicial, the Court look to the nature of the act itself. *Justice Network Inc*, 931 F.3d at 760. The Court must "look to the particular acts relation to a general

function normally performed by a judge." *Mireles*, 502 U.S. at 12. The main consideration includes "whether it is a function normally performed by a judge." *Id.* at 13. Moreover, even an error, irregularity, or act in excess of judicial authority in the exercise of acts that are judicial in nature will not deprive a judge of judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). If the general function and nature of the act is judicial, then the judge is acting within a judicial capacity.

Even accepting Franklin's allegations as true, the Court is convinced that Morledge's actions fall within Morledge's judicial capacity. Franklin alleges that Morledge signed and entered orders, filed or caused to have documents filed in court, and signed and entered a temporary restraining order (Dkt. No. 8). Franklin further alleges that these actions were unlawful, malicious, and the product of a conspiracy (*Id.*). However, for purposes of determining whether the alleged actions were within Morledge's judicial capacity, the Court does not look at the alleged purposes or lawfulness of the conduct; instead, the Court looks to the nature of the alleged acts. *Mireles*, 502 U.S. at 12. Signing and entering orders—including temporary restraining orders—and filing and causing documents to be filed in Court are paradigm examples of the judicial function and are well within Morledge's judicial capacity.

The Court is also convinced that this view of Morledge's judicial capacity comports with Arkansas State law. Under Ark. Code Ann. § 16-13-210(a)(1):

> Any circuit judge of this state, at any time while mentally and physically competent and physically present in the geographical area of the judicial circuit which he or she serves as judge, may hear, adjudicate, or render any appropriate order with respect to any cause or matter pending in any circuit court over which he or she presides. . . .

Morledge, a circuit court judge of the State of Arkansas, had the statutory authority to hear, adjudicate, and render any appropriate order with respect to a matter pending in the court which

he presides. Franklin makes no allegations that the orders and adjudications Morledge signed and entered were made outside of his statutory authority. Accordingly, accepting Franklin's allegations as true, the Court finds that Morledge's conduct was within Morledge's statutorily prescribed judicial capacity.

**2. Complete Absence Of Jurisdiction**

When a judge acts in absence of all jurisdiction, the judge does not retain judicial immunity. "The Supreme Court has instructed [courts] to construe broadly the scope of the judge's jurisdiction . . . where the issue is the immunity of a judge." *Schottel*, 687 F.3d at 373 (internal quotations and citations omitted). Critically, however improper it may be, "[a]n act in excess of jurisdiction will not deprive a judge of immunity." *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356–57. Instead, the act must be in "clear absence of all jurisdiction." *Id.*

Morledge claims that his actions were within his jurisdiction as a circuit court judge (Dkt. No. 11, at 12). Franklin argues that Morledge's actions were "in the complete absence of any jurisdiction." (Dkt. No. 12, at 13). Although Franklin includes this conclusory allegation in his amended complaint (Dkt. No. 8, at 8, ¶ 9), Franklin provides no factual allegations that suffice to meet such a high bar to support such claims and to defeat judicial immunity, even when Franklin's allegations are accepted as true. For these reasons, Franklin's conclusory allegations that Morledge acted in clear absence of jurisdiction fall flat.

The Court reaches the same result examining Franklin's specific factual allegations. Those allegations do not show that Morledge's actions are in clear absence of jurisdiction; rather, they only allege that Morledge may have exceeded jurisdiction. Franklin specifically alleges that

Morledge, along with Murray, would prepare documents that "appeared to be legitimate legal processes and included both civil-style pleadings and criminal-style pleadings" (*Id.*, at 10, ¶ 14). The types of documents cited are a verified complaint, motion for temporary restraining order, and temporary restraining order (*Id.*, at 11, ¶ 16). The types of actions cited are related to case assignments in court (*Id.*, at 11-12, ¶ 17); abiding by orders from and the scope of mandates issued by a higher court (*Id.*, at 15–18, ¶¶ 24–26); and addressing lawyers in open court regarding the payment of court reporters for transcripts for purposes of appeal (*Id.*, at 18-20, ¶27).

Jurisdiction of circuit court judges, like Morledge, is established under Arkansas Code Annotated § 16-13-210(a)(1). Franklin's complaint makes no factual showing how Morledge acted outside the scope of Arkansas Code Annotated § 16-13-210(a)(1). Even accepting Franklin's allegations as true at this stage, Morledge's conduct as alleged by Franklin relates to and is in furtherance of the adjudication of Franklin's cases. Franklin specifically alleges that, because Morledge ignored a stay by the Arkansas Supreme Court, Morledge's conduct was in clear absence of jurisdiction (*Id.*, at 15–18, ¶¶ 24–26). While improper for a court to act contrary to a stay issued by a higher court, impropriety alone does not make the act in clear absence of jurisdiction. Instead, Morledge's judicial actions to issue orders in a case stayed by the Arkansas Supreme Court are more aptly understood as judicial acts in excess of jurisdiction. Thus, Morledge's actions have an arguable claim to jurisdiction and may establish that Morledge exceeded jurisdiction. However, defeating judicial immunity requires alleging specific facts that support the clear absence of jurisdiction, not just an action that exceeds the bounds of a court's jurisdiction. For these reasons, Morledge is entitled to judicial immunity, and the absence of jurisdiction exception does not apply.

Accordingly, the remaining official capacity claims against Morledge are dismissed because Morledge is entitled to judicial immunity. Additionally, the remaining individual capacity claims against Morledge are dismissed because Morledge is entitled to judicial immunity.

**C. Prosecutorial Immunity**

Murray argues that he is entitled to absolute prosecutorial immunity for his conduct (Dkt. No. 11, at 13–14). Franklin argues that prosecutorial immunity does not apply because Murray left the prosecutorial role as a complaining witness (Dkt. No. 12, at 18–19).

"'[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case, insofar as that conduct is intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (quoting *Imbler v. Patchman*, 424 U.S. 409, 430, 431 (1976) (internal quotations omitted). The Eighth Circuit explains that "[a]bsolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

However, in *Kalina v. Fletcher*, the Supreme Court explained that "[t]estifying about facts is the function of the witness, not of the lawyer." 522 U.S. 118, 130 (1997). Thus, "[e]ven when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." *Id.* at 131.

Franklin alleges that Murray is liable under § 1983 for devising a scheme to violate Franklin's civil rights by prosecuting Franklin and for "perjuring himself in subscribing a 'Verified Complaint' wherein he knowingly, willfully, and unlawfully made false statements in order to further and foster the other civil rights violations complained of. . . ." (Dkt. No. 12, at 16; *see also* Dkt. No. 8, at 15, ¶ 24).[1] Murray argues that these allegations entitle Murray to prosecutorial immunity (Dkt. No. 11, at 14). The Court finds that some of Murray's conduct as alleged by Franklin falls within the scope of prosecutorial immunity. The specific factual allegations of creating and filing pleadings and otherwise prosecuting cases fall squarely within the prosecutorial function. Thus, to the extent Franklin alleges that Murray's conduct in creating and filing documents is actionable, Murray is shielded by prosecutorial immunity.

However, Franklin also alleges that Murray stepped outside of the prosecutorial function by perjuring himself by signing the verified complaint (Dkt. No. 12, at 16; *see also* Dkt. No. 8, at 15, ¶ 24; 40). Franklin claims that, by virtue of signing the complaint, Murray undertook the role of a witness in the case (Dkt. No. 12, at 16). As a witness to the case, Franklin claims that the Supreme Court's decision in *Kalina v. Fletcher* means that Murray is not entitled to immunity (*Id.* (citing 522 U.S. 118, 130–31 (1997)). Murray responds that Murray was not acting as a witness but actually acting as an advocate (Dkt. No. 16, at 13). Murray argues that he signed pleadings that were filed on behalf of the state and was not providing sworn testimony (*Id.*). Murray also argues that there was no false statement contained in the verified complaint (Dkt. Nos. 12, at 25; 18, at 12)

---

[1] Although Franklin makes these allegations as to both Murray and Morledge, the verified complaint is attached to Franklin's complaint and includes only a verification signed by Murray (Dkt. No. 8, at 40).

First, Franklin's allegation that Murray's verified complaint contained false information is accepted as true because it is a plausible allegation. *See Ingram v. Arkansas Dep't of Correction*, 91 F.4th 924, 926 (8th Cir. 2024) ("In reviewing a motion to dismiss, we accept 'as true all facts alleged in the complaint.'") (quoting *Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010)). Thus, the Court rejects Murray's argument to the extent that Murray asserts he is entitled to immunity because he made no false statement.

Second, by filing a verified complaint, Murray has sworn to the accuracy of the factual statements therein. Murray's decision to charge Franklin, to draft the complaint, present information to the court, and even select the particular facts alleged fall within the prosecutorial role. *Kalina*, 522 U.S. at 130–131. However, swearing to factual statements is within the "function of the witness, not of the lawyer." *Kalina*, 522 U.S. at 131.

Even if this Court finds that Murray is not entitled to prosecutorial immunity on Franklin's claim for injunctive relief as it relates to Morledge's allegedly false statement, however, the Court on its own motion determines that Franklin lacks standing to pursue such a claim for reasons explained in this Order.

**D. Standing To Pursue Injunctive Relief**

As explained, Franklin's official capacity injunctive relief claims against Morledge are barred by judicial immunity. Likewise, most of Franklin's official capacity injunctive relief claims against Murray are barred by prosecutorial immunity. The Court finds that, even if Franklin's claim for injunctive relief against Murray related to Murray's alleged false statements is not barred by prosecutorial immunity, the Court lacks jurisdiction to adjudicate this remaining claim for injunctive relief. For the following reasons, the Court, on its own motion, dismisses Franklin's remaining claim for injunctive relief for lack of standing.

"'Federal jurisdiction is limited by Article III of the Constitution to cases or controversies; if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction.'" *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *ABF Freight System, Inc. v. Int'l Broth. of Teamsters*, F.3d 954, 958 (8th Cir. 2011)). "Our cases have established that the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. "As the party invoking federal jurisdiction, [Franklin] bear[s] the burden of demonstrating that [he] h[as]standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Franklin "must demonstrate standing for each claim that [he] press[es] and for each form of relief that [he] seek[s] (for example, injunctive relief and damages)." *Id.* (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008) and *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S 167, 185 (2000)).

The Court finds that Franklin fails to allege sufficient facts to establish standing as to injunctive relief against Murry related to Murray's alleged false statements. To satisfy standing's injury in fact requirement, Franklin's allegations must demonstrate that Franklin's injury is "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations omitted). Franklin's false statements claim seeks injunctive relief "forbidding them from engaging in any further scheme(s) to violate Plaintiff's civil rights. . . . " (Dkt. No. 8, at 20–21, ¶ 29). However, Franklin's factual allegations, taken as true, do not allege an imminent injury related to Murray's filing of a verified complaint containing a false statement. Franklin does not allege that Murray has initiated further proceedings against him, nor does Franklin allege with any specific

facts that Muray has included false information in another verified complaint. Franklin alleges no facts that demonstrate an imminent risk of Murray filing another verified complaint against him that contains false information.

Although Franklin alleges specific facts about Murray's past conduct in a prior case, that allegation is not enough to establish standing. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974) (finding that plaintiffs lacked standing for injunctive relief seeking to enjoin judge from enacting discriminatory sentences when plaintiffs could not allege that they faced imminent threat of future sentencing); *City of Los Angeles v. Lyons*, 461 U.S. 95, 104 (1983) ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."). Franklin's only factual allegation supporting his request for injunctive relief is that Murray filed a verified complaint that contained false information in the past. Even if true, Franklin's allegations are inadequate for the Court to entertain jurisdiction over Franklin's claim against Murray that may not be barred by prosecutorial immunity. The Court requires more than an allegation that something occurred in the past to retain jurisdiction over a claim for prospective injunctive relief. Accordingly, the Court dismisses Franklin's remaining official capacity injunctive relief claim against Murray.

**IV. Individual Capacity Claims**

Franklin brings the same claims for money damages as addressed above against defendant Morledge in his individual capacity (Dkt. No. 8, ¶ 26). Defendants assert that to the extent Franklin brings claims against Defendants in their individual capacity, they are entitled qualified immunity (Dkt. No. 11, at 14–15). Franklin does not meaningfully engage with defendants' qualified immunity argument and instead only makes the conclusory statement that defendant Morledge is

not entitled to qualified immunity (Dkt. No. 12, at 15).[2] Franklin also argues that Murray is not entitled to qualified immunity because he chose to testify as a witness by signing a Verified Complaint (Dkt. No. 12, at 17).

"'[D]efendants seeking dismissal under Rule 12(b)(6) based on an assertion of qualified immunity 'must show that they are entitled to qualified immunity on the face of the complaint.'" *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). "Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carter v. Ludwick*, 139 F.4th 982, 989 (8th Cir. 2025) (quoting *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012). "Thus, an officer is entitled to qualified immunity 'unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful.'" *Carter*, 139 F.4th at 989 (quoting *Bernini*, 665 F.3d 1102). "A right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Carter*, 139 F.4th at 989–990 (quoting *Cent. Specialties, Inc. v. Large*, 18 F.4th 989, 996 (8th Cir. 2021). "Courts have discretion to resolve the case under either step of this analysis." *Kampas v. City of St. Louis, Missouri*, 157 F.4th 937, 942 (8th Cir. 2025) (internal quotations omitted).

---

[2] Franklin argues that Defendants have not asserted qualified immunity (Dkt. No. 12, at 15). The Court rejects this claim, as Defendants properly raised qualified immunity in their motion and brief (Dkt. No. 11, at 14–15).

The Court finds that, because Morledge's alleged conduct falls under the protection of judicial immunity, it need not determine whether qualified immunity applies to Morledge's conduct.

The Court does not understand Franklin to seek monetary damages from Murray (Dkt. No. 8, ¶¶ 25, 26; 30). To the extent Franklin seeks such relief for Murray's prosecutorial actions, Murray is entitled to prosecutorial immunity. However, to the extent that Murray's alleged conduct falls outside of prosecutorial immunity, the Court must determine whether Murray is entitled to qualified immunity on the face of the complaint for allegedly making false statements in the verified complaint. Franklin alleges that Murray's false statements deprived him of his right to effective assistance of counsel and due process of law.

**A. Effective Assistance Of Counsel**

To the extent that Franklin alleges Murray's false statements deprived him of effective assistance to counsel, the Court grants Murray qualified immunity. "[T]here is no constitutional or statutory right to effective assistance of counsel in a civil case." *Sisk v. Kubik*, Case No. 99-2945NI, 2000 WL 1145298, at *1 (8th Cir. Aug. 15, 2000). Viewed in the light most favorable to Franklin, his allegations fail to establish a violation of a constitutional or statutory right.

**B. Due Process**

Franklin alleges that Murray made false statements in the verified complaint in the Circuit Court of Phillips County, Arkansas, *State of Arkansas v. Christopher Franklin*, 54CV-25-208. Franklin argues that this action violated his Fourteenth Amendment rights. To the extent that Franklin brings these claims against Murray in his individual capacity, the Court finds that Murray is entitled to qualified immunity.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State ... shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Franklin broadly asserts that his due process rights were violated by Murray's allegedly false statement (Dkt. Nos. 8; 12).

The Court's first step is to determine whether Franklin establishes a violation of a constitutional or statutory right. Construed in the light most favorable to Franklin, Franklin alleges that Murray fabricated evidence or otherwise engaged in a reckless investigation by stating that Franklin failed to abide by a mandate from the Arkansas Supreme Court when no such mandate existed (Dkt. No. 8, ¶ 24). Individuals have a due process right regarding fabricated evidence and reckless investigations in criminal proceedings. *See Engesser v. Fox*, 993 F.3d 626, 629 (8th Cir. 2021) (recognizing due process right regarding reckless criminal investigation); *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012) ("Intentionally or recklessly failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause."); *Jones v. Custer County*, Case No. 8:17-cv-394, 2018 WL 2050568, at *8–9 (D. Neb. Apr. 26, 2018) (finding that a Fourteenth Amendment claim for "manufacturing false evidence or purposefully ignoring evidence" may exist). Construed in the light most favorable to Franklin, Franklin has plausibly alleged a violation of a constitutional right.

Given that Franklin alleges a plausible violation of his constitutional rights, the Court next will determine whether that right was clearly established at the time of the violation such that a reasonable prosecutor would have known his action was unlawful. "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 607 U.S. ___ (2026) (quoting *Escondido v. Emmons*, 586 U. S. 38, 43 (2019) (per curiam)). The Supreme Court

has also instructed that courts are "not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Franklin's response identifies no authority pointing the Court to a finding that it was unconstitutional for a prosecutor in a civil case to have signed a verified complaint that contained a false statement. The Court is also unable to find any similar authority. Even when abstracted to a higher level of generality, the Court is unable to identify a case where a prosecutor acting under similar circumstances was held to violate the constitution. Accordingly, Murray is entitled to qualified immunity on the remaining federal law claim brought against him.

**V. State Law Claims**

Franklin brings claims for violation of the Arkansas Constitution and the tort of outrage under Arkansas state law. Defendants argue that they are entitled to statutory immunity for Franklin's state law tort claims (Dkt. No. 11, at 16). Franklin did not address statutory immunity in his response (Dkt. No. 12). The Court declines to resolve the issue of statutory immunity because it declines to exercise jurisdiction over the remaining state law claims.

The Court's jurisdiction over this case is rooted in 28 U.S.C. § 1331 because Franklin's claims are brought under § 1983 and § 1985. Because the Court has federal question jurisdiction, it also may exercise supplemental jurisdiction over "claims that are so related to the claims in the action" that form the basis for federal jurisdiction. 28 U.S.C. § 1367. However, exercising supplemental jurisdiction is not mandatory; rather, it is discretionary. *Aldridge v. City of St. Louis, Missouri*, 75 F.4th 895, 901 (8th Cir. 2023). "District courts should consider such factors as 'the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims. . . .'" *Id.* (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

The Eighth Circuit has observed that in the "usual case" where all federal claims are dismissed on a motion for summary judgment, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Starkey v. Amber Enters., Inc.*, 987 F.3d 758, 765 (8th Cir. 2021) (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

After carefully considering the supplemental jurisdiction factors, Court declines to exercise supplemental jurisdiction over Franklin's remaining state law claims. Here, the Court has dismissed all the federal law claims on immunity grounds and does not find that judicial economy, convenience, fairness, or comity support continuing to exercise supplemental jurisdiction over state law claims. The state law claims are dismissed without prejudice.

## VI. Conclusion

For the following reasons, the Court grants, in part, Defendants' motion to dismiss (Dkt. No. 10). On its own motion, the Court dismisses without prejudice Franklin's claims for injunctive relief against Murray related to the inclusion of false statements in a verified complaint. The Court dismisses Franklin's federal law claims against Defendants consistent with the terms of this Order (Dkt. No. 8). The Court declines to exercise jurisdiction over Franklin's state law claims and dismisses without prejudice those claims (*Id.*). Accordingly, the Court dismisses Franklin's complaint and amended complaint (Dkt. Nos. 1; 8).

It is so ordered this 31st day of March, 2026.

Kristine G. Baker
Kristine G. Baker
Chief United States District Judge